27 C.C.P.A. (Patents)

## HAGLUND v. POTTS.
### Patent Appeal No. 4246.

Court of Customs and Patent Appeals.
Feb. 26, 1940.

Eugene C. Brown, of Washington, D. C., for appellant.

E. W. Adams, of New York City (J. W. Schmied, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner of Interferences awarding priority of invention to appellee, the senior party, as to all of the counts.

The interference involves a reissue application of appellee filed April 10, 1931, for reissue of patent No. 1,708,954, granted April 16, 1929, upon an application filed September 17, 1925, and a patent of appellant No. 1,929,947, granted October 10, 1933, upon an application originally filed January 29, 1929, and renewed May 6, 1932.

This is one of a series of interferences instituted at the request of appellee, who copied claims from several patents into his application for reissue of his said patent. Some of these interferences have been adjudicated by this court. They are: Duerr & Broyles v. Potts, 90 F.2d 117, 24, C.C.P.A., Patents, 1198; Dirkes, Kimball & Long v. Potts, 90 F.2d 120, 24 C.C.P.A., Patents 1236; the consolidated cases of Creed et al. v. Potts, Salmon v. Potts, Bancroft v. Potts, and Griffith v. Potts, 96 F.2d 317, 25 C.C.P.A., Patents, 1084; and the consolidated cases of Noxon v. Potts, and Franklin v. Potts, 102 F.2d 836, 26 C.C.P.A., Patents, 1031. In all of these cases this court affirmed the decisions of the board in awarding priority of invention of the subject matter of the interference to appellee, Potts.

Eight counts are here in issue, all of which were copied from the patent of appellant. Counts 1, 2 and 5 are illustrative, and read as follows:

"1. In a signalling system, a source of telegraph signals, a receiving apparatus comprising one or more discharge tubes responsive to said signals for performing signaling functions, and an auxiliary tube operable concurrently with one or more of said tubes for performing auxiliary or non-signaling functions.

"2. In signalling system, a source of telegraph signals comprising two different line conditions occurring in irregular succession, an electric discharge device responsive solely to one line condition, a second electric discharge device responsive solely to the other line condition, an output circuit for each device and separate current responsive means in each output circuit."

"5. In a signalling system, a source of signals, a plurality of electric discharge tubes, means responsive to said signals for selecting a predetermined tube for operation, separate means for starting a discharge through the selected tube and further means for determining the period of operation of said discharge."

The subject matter of the invention relates broadly to a device or system whereby messages are electrically transcribed by the use of certain combinations of elements, including electric discharge tubes, in telegraph systems.

As originally declared, the interference involved a single count, count 1 herein, and in response to an order to show cause why judgment on the record should not be entered against him, dated November 12, 1934, appellant, on December 27, 1934, moved to dissolve the interference on the alleged grounds that the application of appellee does not disclose the signal system described in the count; that the disclosure of appellee is inoperative; and that appellee is estopped from claiming the subject matter of the count. On December 27, 1934, appellee moved to add eight proposed counts to the interference.

The two said motions were disposed of in a decision by the Primary Examiner dated March 27, 1935. With respect to the motion to dissolve, the Primary Examiner thoroughly analyzed the contentions of appellant and denied the said motion. The said decision describes the operation of the complex mechanisms of both parties, which it is not necessary to detail here, and proceeded to apply the count to the disclosure of appellee. Figure 4 of appellant is herein reproduced in connection with the following portions of the decision of the Primary Examiner:

April 16, 1929.          L. M. POTTS          1,708,954

TRANSMISSION SYSTEM

Filed Sept. 17, 1925          11 Sheets-Sheet 4

Fig. 4.

Inventor:
Louis M. Potts
by Ewodanns Atty.

"In the application of the count to the disclosure of the party Potts, it is found that the count will read on Potts in the manner stated in his brief. The portion of the count which reads as follows: 'a receiving apparatus comprising one or more discharge tubes responsive to said signals for performing signaling functions' is readable in the manner stated by Potts. This portion of the count is applied as follows: 'a receiving apparatus' is read as distributor 422, obviously referring to all of Figure 4, which is said to be com- prised of one or more discharge tubes re- sponsive to said signals for performing signaling functions. Potts says these tubes may be tubes 435, 436, 65, 66 and 72 to 87. The tubes 435 and 436 respond to sig- nals incoming over line 253 and repeat these signals to the operating windings of tubes 65 and 66. These tubes 65 and 66 are controlled by tube 67. The tubes 72 to 79, which are also a part of the re- ceiving apparatus, and which correspond in operation and function with the seg- ments and brushes of a mechanical ro-

tary distributor, close paths in cyclical sequence to the operating windings of pairs of tubes 80-81, 82-83, 84-85 and 86 and 87 which are in effect storage relays to repeat received signals to the outgoing lines as 427.

"Potts further states that the remaining tubes of distributor 422 are auxiliary tubes which are operable concurrently with one or more of said tubes for performing auxiliary or non-signaling functions. It is held that these remaining tubes may be broadly considered as performing auxiliary or non-signaling functions as stated by Potts.

"For these reasons it is held that the count will read on Potts' disclosure in the manner stated by Potts."

In connection with the ground for dissolution that the system of appellee is inoperative, the Primary Examiner stated that the same ground for dissolution was urged by appellant in Interferences Nos. 68,623 and 68,624, which said interferences were finally determined by this court in the consolidated cases of Noxon v. Potts and Franklin v. Potts, supra, and the Primary Examiner stated that the Patent Office decisions made therein relating to this ground were incorporated by reference in the present interference. It may be noted that the decision of this court in those cases was made subsequent to the decision of the Primary Examiner in the instant case.

With respect to the contention of appellant, in his motion to dissolve, that the disclosure of appellee is inoperative, the Primary Examiner stated: "In addition to the grounds urged and answered in the first contention, the party Haglund also raised the question of operativeness of the means for synchronizing the distributor 422 by control of the oscillator 252, urging as a basis therefor certain alleged frailties in the operation of relay 437. This same question was raised and decided in companion interference No. 68,622 in the consideration by the Examiner of count 6. The decision made therein is herein incorporated as part of this decision. The holding by the Examiner therein was favorable to the party Potts."

And on the question of estoppel he stated:

"It is contended by the party Haglund that the invention covered by the count of this interference was not claimed by Potts in his original patent and that he should not now be allowed to claim this invention in his reissue, citing in support thereof numerous decisions holding that the reissue must be for the same invention as was covered by the claims of the patent. That this phase of the law is well established cannot be questioned, nor is it. The question necessarily involved is, however, whether or not Potts did claim this subject matter in his original patent.

"In answer to this contention, the party Potts refers to several claims of his patent as covering the disclosure of Figure 4. Claim 18 of the Potts patent is found to be drawn to Figure 4 of the drawings. The analogy of this claim to the original count of this interference is as follows:

"The introductory phrase states, 'In a telegraph system'; the count states 'In a signalling system,' both systems are telegraph systems. Claim 18 next states 'means for generating high frequency signals'; the count states 'a source of telegraph signals', the language of the count is so far broader than the language of the claim; the claim next specifies a multiplex distributor and certain of its elements; the count calls for a receiving apparatus. The multiplex distributor of the claim by necessary inference includes some means to receive the high frequency signals which conceivably might be a line relay or its equivalent, such as the relays 65 and 66 of Potts which, in a broad sense, might be considered a part of a signal distributing mechanism. Thus the claim is drawn to Figure 4 of Potts and covers the subject matter thereof broadly and is similar to the count.

"It is permissible in a reissue application to present claims to the same invention but more specifically drawn or to subcombinations or elements which were claimed in the patent in combination with other elements. See Walker on Patents (6th Edition) Sections 289 and 290 and cases cited therein.

"A further test which is applicable is whether claims specifically drawn to this subcombination would have constituted divisible subject matter had they been presented in the original application. The answer is in the negative. Such combinations are ordinarily considered to be indivisible subject matter and could only be claimed by applicant in a reissue of the original patent. (Rule 92.)

"It is therefore, held that the party Potts is not estopped from claiming the subject matter of the count on this ground."

On the said motion of appellee to add eight proposed counts to the interference, the Primary Examiner granted the motion as to five and denied it as to three of the proposed counts, on the ground that they did not read on the reissue application of appellee. Appellee appealed from the said decision of the Primary Examiner with respect to the denial of the motion as to two of the counts, which are counts 2 and 5 of this interference. The board reversed the decision appealed from, using the following language:

"In the Potts disclosure there are four pairs of tubes 80, 81, etc. disclosed. We may consider only the tubes 80 and 81. The tube 80 responds to one line condition and the tube 81 responds to another line condition. These two tubes do not respond alternately to every alternate line condition. If a signal operates tube 80, the next signal, if of the other line condition, will not operate the other tube 81, since these tubes will not be connected in circuit until after the three other pairs of tubes have been connected in succession to receive incoming signals. In other words the two tubes 80 and 83 do not respond to the whole number of line conditions as the examiner holds that the count requires.

"It seems to us that the examiner has given the count a too limited construction. The count does not contain any limitation that the two tubes must respond to all of the line conditions. It is obvious that they may respond to only a part of the line conditions or impulses and still define an operative system. The count is apparently so broadly drawn that it reads directly on the Potts disclosure, and it must be so held.

"The examiner held that proposed count D does not read on the Potts disclosure because it does not disclose 'means *responsive* to *said signals for* selecting a predetermined tube for operation.'

"The examiner holds that the tube selection is a function of the distributor 422 and not of the signal responsive means. He bases his conclusion on lines 65 to 81, page 8 of the patent. This part of the description relates to the driving of the distributor 422 by the oscillator 252 at a certain rate of speed but it does not refer to the selection of the tube. The distributor conditions the tubes 72 and 73 but the actual selection of the tubes is made by the particular signal repeated in the tubes 65 and 66. As far as can be ascertained it is only the particular signal which determines which tube is selected. We believe that the count will read on the Potts disclosure.

"The decision of the examiner denying the motion of Potts to add proposed counts A and D is accordingly reversed."

A redeclaration of interference consisting of the eight counts herein was made on October 18, 1937.

Since the preliminary statement of appellant as to counts 2 to 8. inclusive alleged no date prior to the filing date of appellee, an order to show cause why judgment on the record should not be entered against appellant was issued November 26, 1937. In response thereto, appellant, on December 20, 1937, filed a paper, again averring that the disclosure of appellee is inoperative as proved by testimony taken in Interference 68,621 and considered in Interferences 68,622, 68,623, 68,624 and 68,872; that there is no claim in the said patent of appellee for the invention which constitutes the subject matter of the counts of the issue, and that therefore the commissioner was without authority to permit appellee to contest the claims of the patent of appellant; that the system disclosed in appellant's patent is not disclosed in the patent of appellee and does not perform the functions of the system defined by the claims of the issue; that the record shows definitely that appellee was not attempting to claim the invention defined in the claims of appellant's patent; and that it is shown by the record that the various features which render the disclosure of appellee inoperative do not constitute inadvertence, accident or mistake, as contemplated by the provisions of Section 4916 of the Revised Statutes, U.S.C., title 35, sec. 64, 35 U.S.C.A. § 64, covering reissues, and in the absence of which the commissioner was without authority to consider the case.

Evidently there must have been a decision on the said response to the latter order to show cause, although such decision does not appear in the record here. However, there is a decision of the Examiner of Interferences dated January 5, 1938, which states that appellant had requested reconsideration of his response to the order to show cause and an amplification *of the decision of December 22, 1937 by the Examiner of Interferences.* The examiner stated that rather than modify the decision of December 22, 1937, the said decision was vacated and a new decision

rendered. The pertinent part of this decision, as modified by the decision of the Examiner of Interferences of January 11, 1938, reads as follows:

"This interference is one of a series of interferences instituted at the request of Potts by copying claims from several patents into his application for reissue of patent 1,708,954. During the motion period Haglund brought a motion to dissolve, one of the grounds of said motion being that the Potts' device was inoperative. The primary examiner denied the motion to dissolve. In a companion interference (68,622) Haglund was permitted to rely upon testimony taken in Interference 68,621 to show that the Potts' device is inoperative. The Board of Appeals has held that said testimony failed to prove that the Potts' device is inoperative.

"The Board of Appeals having held in Interference 68,622, in which the same parties were involved, that the Potts' application discloses an operative device and the apparatus is operative and this holding has not been modified the examiner of interferences is bound by their decision and must hold in like manner."

Judgment was entered awarding priority of invention to appellee.

From his decision, as amended, appellant appealed to the Board of Appeals on substantially the same grounds, more elaborately set forth, as were urged before the Examiner of Interferences.

On June 25, 1938, appellant filed a motion requesting permission to use the testimony taken in Interference 68,621 upon the question of operativeness of the disclosure of the said patent of appellee, under the provisions of Rule 157 of the Patent Office that "testimony taken in an interference proceeding may be used in any other or subsequent interference proceeding, so far as relevant and material * *."

The Board of Appeals, on June 29, 1938, returned the case to the Examiner of Interferences for such consideration, if any, of appellant's motion of June 25, 1938, as he deemed it entitled to receive. On July 11, 1938 the Examiner of Interferences denied appellant's motion of June 25, 1938, stating:

"The party Haglund has filed a motion under the provision of rule 157 for permission to use the testimony taken in interference 68,621, involving the parties Creed et al. and Potts, upon the question of operativeness of the disclosure of the Potts patent 1,708,954 involved herein.

"This interference is one of a series instituted at the request of Potts by copying claims from certain patents into his application for reissue of patent 1,708,954. Permission was granted to take testimony in one of the series, viz: 68,621, upon the question of the operativeness of the Potts disclosure. Although neither the party Haglund nor his assignee was a party to interference 68,621, Haglund's assignee, the Western Union Telegraph Co., petitioned the Commissioner that action be suspended in all of the cases until the question of operativeness was determined in interference 68,621. The petition was granted and on October 2, 1936 the examiner of interferences rendered a decision in interference 68,621 holding that it had not been established that the Potts disclosure was inoperative. This decision was subsequently affirmed by the Board of Appeals and by the Court of Customs and Patent Appeals (Creed v. Potts, 96 F.2d 317.)

"In deciding interference 68,622 (Haglund v. Potts [)] which was considered by the examiner of interferences as binding on him in the instant case and upon which he based his decision herein, the Board of Appeals referred to interference 68,621 and the testimony taken therein, also in deciding interferences 68,623 and 68,624 (Noxon v. Potts) in which the Western Union Co. was a party, the Board of Appeals referred to interference 68,621 and the testimony taken therein; however, the Court of Customs and Patent Appeals held on February 7, 1938 (Noxon v. Potts, 94 F.2d 388) that the testimony in interference 68,621 could not be used in the cases before them as no proper motion had been brought and granted under the provisions of rule 157 of the U. S. Patent Office for the use thereof stating:

" 'Rule 157 seems to require filing of a motion and hearing thereon, if objections are made thereto, before testimony in one interference may be introduced in evidence in another such proceeding.
* * *

" 'The Commissioner did not order that testimony in 68,621 be considered in the other interferences, but merely suspended the interference pending taking of testimony with contemplation that the parties in the suspended cases would take such action relative thereto as they deemed proper.'

"It thus appears that the rule of proper procedure laid down in that case applies

here and that, consequently, a motion under rule 157 seems to be the proper manner of proceeding to introduce the testimonial record of interference 68,621 herein. However, regardless of whatever ideas counsel for Haglund and the Western Union Co. may have entertained as to the proper procedure prior to February 7, 1938, the proper procedure was clearly pointed out at that time, yet counsel has delayed from February 7, 1938 to June 25, 1938 in bringing his motion under rule 157 without any showing in excuse of such long delay.

"Such delay is particularly bad in the present case as a patent issued on April 16, 1929 is involved and all delays tend to shorten the period of enjoyment of any rights which may be obtained as a result of the reissue thereof."

Following an appeal from the decision of the Examiner of Interferences denying the motion for use in the present interference of testimony taken in Interference 68,621, the Assistant Commissioner of Patents, on August 19, 1938, affirmed the said decision of the Examiner of Interferences, and on September 9, 1938, in response to appellant's petition for reconsideration of his decision, denied the petition.

Thereafter, appellant appealed to the Board of Appeals, which board's decision, on November 4, 1938, affirmed the decision of the Examiner of Interferences awarding priority of invention of the subject matter in issue to appellee, the senior party. Upon petition by appellant to revise and amplify the decision of November 4, 1938, the board, on November 30, 1938, after thoroughly discussing the contentions of appellant, stated that it saw no reason for a modification of its said decision and the petition was accordingly denied.

In its decision of November 4, 1938, the board referred to the consolidated cases of Noxon v. Potts and Franklin v. Potts, supra, in which was discussed the matter of the testimony taken in Interference 68,621, and its use in the companion interferences under consideration. In that case we pointed out that no motion was presented under Rule 157 to have the evidence from the companion case, 68,621, made a part of the record in the interferences involved in those appeals, and we held, in effect, that the evidence in Interference 68,621 was not part of the consolidated record and it was not considered in the determination of the issues presented by those appeals.

In the present interference, on June 25, 1938, appellant moved under Rule 157 to use the testimony taken in Interference 68,621 upon the question of operativeness of the disclosure of appellee's patent. The Examiner of Interferences, in denying this motion, held that counsel for appellant had delayed from February 7, 1938, the date of the decision in the Noxon and Franklin consolidated cases, supra, to June 25, 1938, without any showing to excuse the long delay. The examiner stated that the delay "is bad in the present case" where reissue was involved, since it tends to "shorten the period of enjoyment of any rights which may be obtained as a result of the reissue * * *." The board held that since Rule 157 provides that testimony taken in an interference proceeding may be used in any other interference proceeding so far as relevant and material, it must have as its basis a motion duly made *and granted*. Following this reasoning, the board held that since the motion had not been granted and the denial thereof had been affirmed by the assistant commissioner, the matter was not properly before the board for consideration.

It is apparent to us that in the present appeal there are no different issues than those which have been before us involving the same reissue application of appellee. It has been contended in those cases, as is contended here, that the disclosure of appellee is inoperative; that his application for reissue is for a different invention than that claimed in his original patent; and that even if appellee's disclosure now embodies various changes which it is alleged appellee attempted to incorporate in his application to overcome alleged inoperative features pointed out by appellant, he would have no right to make the claims of appellant's patent constituting the counts of the issue.

We disposed of the question of the inoperativeness of the device of appellee in the case of Creed et al. v. Potts, supra, stating [96 F.2d 323]: "After a careful examination of the record and the briefs of the parties, we are not satisfied that the Board of Appeals erred in holding that appellants' contentions of inoperativeness of appellee's device had not been established, either with respect to the second stop pin hereinbefore discussed, or with respect to any of the other grounds of inoperativeness relied upon by appellants."

In that case we also held the contention of appellants that the reissue application of appellee is for a different invention than that disclosed in his patent, to be an ex parte matter, and that it does not relate to the issue of priority, citing Norling v. Hayes, 37 App.D.C. 169. We also approved the holding of the Patent Office tribunals that amendments made by the appellee during the prosecution of his reissue application did not constitute new matter, and we found no ground for holding·that appellee's application did not support the counts there involved. We adopted these same conclusions in our decision as to the said interferences consolidated with the Creed et al. case, supra.

While the counts herein differ in language from the counts of the consolidated cases of Creed et al., etc., supra, they present no substantially different issue, and we see no reason to hold differently here than we held there.

No useful purpose can be accomplished by discussing other contentions urged by appellant. We have read the record with care, and have given full consideration to every question raised by appellant. We agree with the holdings appealed from, and, therefore, the decision of the Board of Appeals is affirmed.

Affirmed.